UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. CR-09-218 (PLF) |
| v. | : | |
| | : | VIOLATION: |
| AVIATION SERVICES | : | Conspiracy to Export to |
| INTERNATIONAL B.V. | : | Embargoed Country |
| d/b/a | : | (18 U.S.C. § 371) |
| DELTA LOGISTICS B.V., | : | |
| Defendant. | : | |
| ROBERT KRAAIPOEL, | : | |
| Movant. | : | |

### JOINT MEMORANDUM IN AID OF SENTENCING ON BEHALF OF DEFENDANTS ROBERT KRAAIPOEL AND AVIATION SERVICES

Defendant Robert Kraaipoel and Defendant Aviation Services, through counsel, hereby submit this Joint Memorandum in aid of the Court's sentencing in this matter.

1. This is a case that has stretched for over four and a half years, during which Mr. Kraaipoel has done all that has been asked of him in regard to making amends for his actions, and during which both Defendants—Mr. Kraaipoel and Aviation Services—have undergone substantial financial devastation.  The government has recommended that the Court impose a sentence of probation as to Mr. Kraaipoel, and that the Court impose the agreed upon sentence (pursuant to FRCP Rule 11(c)(1)(C)) of a $100,000.00 fine and five years of probation as to Aviation Services.  In light of the government's recommendation of a probationary sentence as to Mr. Kraaipoel, this Memorandum will be relatively brief, and seeks only to add a few additional points for the Court's consideration of sentence.

1

2. Nothing in this Memorandum is meant to minimize the significance of the United States export controls legal regime as it applies generally, or as it applies to goods going to Iran. Obviously, this is an issue with heightened sensitivity, particularly today.  To the degree this Memorandum or counsel's oral allocution suggest leniency, or suggest that the offenses at issue need to be seen through the lens of Mr. Kraaipoel's situation, it is not meant to undermine the export controls legal regime, but to give the Court context that is hopefully helpful in evaluating what sentence to impose.

3. Mr. Kraaipoel will be 70 years old this December.  He has never been convicted of a criminal offense before the instant matter.  He has been married to the same woman, Mia Cornelia van Gemert for more than forty-five years.  He has lived a good and decent life, raising his family, supporting himself, his wife, and his children.  Though he had only a high school education, Mr. Kraaipoel developed expertise and experience in aircraft parts sales, and he worked in related industries for many years before the instant case arose.

4. Mr. Kraaipoel comes from a country that has had a very different relationship with Iran than does the United States.  The Netherlands does not have the same history with Iran that the United States has.  At the time of the conduct at issue, Dutch citizens were not prohibited from traveling to Iran, were not prohibited from business transactions with Iran, and were not precluded from selling aircraft parts to Iran.  Had Mr. Kraaipoel or Aviation Services sold similar aircraft parts or equipment into Iran, but the aircraft parts and equipment were not from the United States, he not only would not be charged with an offense here, he would not have been charged with a criminal offense anywhere.  The Court ought to take this into account in determining the sentence here, as jurisdiction in this case does not flow from Mr. Kraaipoel being a U.S. person—he is not one.  Jurisdiction arises from the *quasi in rem* legal theory that

the United States is able to control what others do with U.S. goods.  In the realm of the criminal law, this is a relatively esoteric notion.  One can imagine a person not from the United States wondering why the United States gets to tell him or her what he or she can do with U.S. goods.

  5.  However, the fact is that Mr. Kraaipoel did knowingly violate the United States export controls regime which mandates that U.S. goods, such as those at issue here, not be shipped to Iran.  Mr. Kraaipoel understands this, though he undoubtedly had some resistance to the idea prior to his arrest.  What is most salient here, however, is that once Mr. Kraaipoel was arrested and charged, he acted promptly to remedy his actions, to accept responsibility, and to substantially assist the very export controls regime that resulted in his arrest.  In short, Mr. Kraaipoel made amends for his conduct, and he fully respects the law that he completely understands, at least now, that he violated.

  6.  The United States has corroborated for the court the extent of Mr. Kraaipoel's cooperation and its importance to the prosecution of others.  The government's rendition need not be repeated here.  However, each of the Defendants would emphasize certain aspects of that cooperation:

- Mr. Kraaipoel's first debriefing was very prompt, occurring in October 2007.
- Mr. Kraaipoel's cooperation was at his own expense.  He flew to Dublin for debriefings on two occasions (October 2007 and January 2008), paying for his own lodging and airfare (as well as that of counsel); he provided extensive volumes of documents to the government, copied and shipped at his own expense.  He flew to the United States for his self-surrender and debriefings.

- Mr. Kraaipoel has never declined a single request for a meeting, debriefing, or call. After each of his meetings and /or debriefings with the United States, he followed up with requested documents and information.

- And, as noted by the government, in each of his meetings, calls, testimony, and debriefings, "Mr. Kraaipoel was truthful and forthcoming."

7. We tend to take cooperation a bit for granted in the United States. It has become a common place of our criminal justice system, but it is not common in other countries. Indeed, at least in under-signed counsel's experience, cooperation and informing is viewed through a much different lens in European countries, particularly those that suffered through war and occupation. Mr. Kraaipoel did the right thing in cooperating, but it was at great emotional cost. The court should weigh this as well in evaluating his remorse, his regret, and ultimately, his sentence. This case has had an emotional and physical burden on Mr. Kraaipoel, who has substantial health issues, and it has also affected his wife, who has needed medical assistance to deal with the stress and anxiety she faces due to the loss of her pension, the loss of her financial security, and the potential loss of her husband.

8. The final point that Defendants would like to make concerns the financial devastation this case has wreaked on both Defendants. As a result of the Temporary Denial Order (TDO) issued by the Commerce Department, Aviation Services was shut down. Moreover, even though it had already paid for a great deal of equipment, the suppliers of that equipment refused to refund the money that Aviation had advanced for the goods. Aviation has never been able to collect on those debts, and the money and equipment has never been returned. In an effort to satisfy its obligations, Aviation Services "borrowed" the pension funds owed to Mr. Kraaipoel and his wife in connection with their work. Technically, Aviation Services now owes the

Kraaipoel's predecessor company, Asihold, over 397,000 Euros for this loan, but Aviation will never be able to return those funds. For all intents and purposes, Mr. Kraaipoel and his wife lost their pensions, which amounted to their life savings. All they really have left is a car, a house with a mortgage, and an extremely marginal month to month existence. They have tried to develop additional businesses since the inception of this case, but without success. And, one of their chief barriers is that the TDO has resulted in banks being unwilling to loan them funds to start or support any business. While Mr. Kraaipoel's Presentence Report suggests that he can afford a fine, the Report itself demonstrates what a financial razor's edge that he and his wife live on, with a projected $19.00 dollar margin each month. In terms of imposing a financial hardship on a criminal defendant, this prosecution has already accomplished that objective far more than the Court may have wished had it been the one to decide what the financial consequences should be. Mr. Kraaipoel is broke, out of business, and has very poor prospects for his old age. It is not necessary to impose additional financial hardship on him.

## Conclusion

The Court is faced with a serious matter, but one in which the United States is recommending that probation be imposed. Certainly, Mr. Kraaipoel concurs in that recommendation. And, the United States, at least in its filing, has not sought an additional financial penalty on him. Counsel suggests that, in light of all the circumstances, the Court should sentence Mr. Kraaipoel to a probationary sentence, and allow him to try and put his life back together.

June 11, 2012                                            Respectfully submitted,


                                                          /s/  Mark J. Rochon
                                                         MARK J. ROCHON

5

COUNSEL FOR ROBERT KRAAIPOEL
AND AVIATION SERVICES
INTERNATIONAL B.V.
D.C. BAR NO. 376042

Miller & Chevalier Chartered
655 Fifteenth Street, NW, Suite 900
Washington, DC  20005-5701
(202) 626-5800
mrochon@milchev.com